```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                     COLUMBUS DIVISION
```

STEPHEN K. BELL,                       *

    Plaintiff,                     *

vs.                                    *    CASE NO. 4:07-CV-174(CDL)

SHENANDOAH LIFE INSURANCE              *
COMPANY,
                                       *
    Defendant.
                                       *

O R D E R

This action arises from Defendant's denial of Plaintiff's long term disability benefits, which Plaintiff seeks to recover under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Although the parties initially filed motions for summary judgment (Docs. 12 & 15), they acknowledged at a telephone conference on December 2, 2008 that the proper vehicle for deciding this action is not Rule 56 but through findings of fact and conclusions of law. *See Doyle v. Liberty Life Assurance Co.*, 542 F.3d 1352, 1363 n.5 (11th Cir. 2008) (explaining that when a decision is based on the agreed-upon administrative record, judicial economy favors using findings of fact and conclusions of law, not Rule 56, to avoid an unnecessary step that could result in two appeals rather than one); *see also Chilton v. Savannah Foods & Indus., Inc.*, 814 F.2d 620, 623 (11th Cir. 1987) (per curiam) (noting that the Court, and not a jury, is the proper factfinder in an ERISA case).

1

Therefore, the parties' pending motions for summary judgment (Docs. 12 & 15) are denied as moot, and the Court decides this case in favor of Defendant with the following Findings of Fact and Conclusions of Law.[1]

FINDINGS OF FACT AND CONCLUSIONS OF LAW

**I.   Findings of Fact**

    A.   <u>Plaintiff's Medical Condition and Application for ERISA Benefits</u>

Plaintiff, a heavy equipment operator, was employed by Alexander Contracting Company ("Alexander"). (Admin. R. 100, 672.) During his employment, he began suffering symptoms associated with gastric outlet obstruction, hiatal hernia, and reflux esophagitis. (Admin. R. 76.) Plaintiff's final medical diagnoses were: "(1) Gastric tumor multiple, borderline malignant by histology; (2) Gastric outlet obstruction; (3) Healed ulcer; (4) Chronic cholecystitis with cholelithiasis; (5) Multiple small bowel polyps; [and] (6) Hiatal hernia with reflux esophagitis." (*Id.* at 220.) On December 3, 2004, Plaintiff underwent extensive abdominal surgery for his medical problems. The recovery period for this type of surgery was estimated to be eight to twelve weeks before he could resume heavy type work activities. (*Id.* at 452.) Dr. Fernando Sanchez, Plaintiff's

---

[1]The Court bases its Findings of Fact and Conclusions of Law on the administrative record that was available to the plan administrator when it made its decision to deny benefits. *See Glazer v. Reliance Standard Life Ins. Co.,* 524 F.3d 1241, 1246 (11th Cir. 2008); *see also Jett v. Blue Cross and Blue Shield of Ala., Inc.,* 890 F.2d 1137, 1140 (11th Cir. 1989).

surgeon, noted that Plaintiff's post-operative course was unremarkable. (*Id.* at 163.)

Plaintiff was paid short term disability benefits from December 1, 2004 until March 3, 2005. Plaintiff completed a long term disability claim on March 12, 2005. (*Id.* at 271-77.) Plaintiff was initially approved for long term disability with benefits beginning March 3, 2005. (*Id.* at 248.). However, Defendant eventually discontinued payment of long term disability benefits after concluding that Plaintiff was no longer disabled for purposes of long term benefits under Defendant's policy.

B.  The Policy

Plaintiff was insured under a Group Long Term Disability Insurance Policy ("Policy") maintained by Alexander. (Admin. R. 1-35.) That Policy defined "total disability" as follows:

> **TOTAL DISABILITY** means the Insured is unable to perform all the Material and Substantial Duties of his Regular Occupation due to Sickness or Injury and Insured is not working in any occupation or Insured is working but due to Sickness or Injury is earning less than 20% of his Monthly Earnings. **The loss of a professional or occupational license or certification does not, in itself, constitute Total Disability.**

(*Id.* at 8.)

The Policy provided that "[Defendant] shall have authority and full discretion to determine all questions arising in connection with the Policy benefits," and that the "actions, determinations, and interpretations of [Defendant] with respect to all such matters shall be conclusive and binding." (*Id.* at 28.) The Policy also provided

3

that "[i]n making any benefits determination under [the] Policy, [Defendant] [would] have the discretionary authority both to determine an Insured's eligibility for benefits and to construe the terms of [the] Policy."  (*Id.* at 31.)

    C.   <u>Handling of Plaintiff's Claim</u>

Defendant retained a third party administrator, Disability Reinsurance Management Services, Inc. ("DRMS"), which provided guidance as to the final claims adjudication decisions pursuant to a services agreement.  (Knutsen Aff. ¶ 2, Aug. 20, 2008.)  Final decisions, however, were made by Defendant, and Defendant had the right to reject DRMS's recommendations.  (*Id.*)  Pursuant to a reinsurance agreement, Defendant retained a reinsurer, Union Security Insurance Company ("Union Security"), which completely reimbursed Defendant for benefits paid as long as Defendant's decisions were consistent with DRMS's recommendations.[2]  (*Id.* ¶¶ 8-9.)

During the course of the ongoing evaluation as to Plaintiff's eligibility for long term benefits, Defendant requested additional medical documentation from Plaintiff's physicians.  Dr. Sanchez indicated that Plaintiff could return to work as of March 1, 2005. (Admin. R. 551.)  Plaintiff's gastroenterologist, Dr. James Spivey, submitted documentation that indicated that Plaintiff had no

---

    [2]The Court notes that Defendant followed DRMS's recommendation in this case.  (Knutsen Aff. ¶ 2.)

4

functional limitations as of December 6, 2005.[3]  (*Id.* at 106.) Plaintiff stated that he alone made the decision to refrain from working because "his doctors [did] not want to get involved in saying he [could not] work." (*Id.* at 506.)  When asked what was preventing him from working, Plaintiff stated that it was because "he ha[d] to go to the bathroom 3 to 4 times a day and ha[d] to eat every 3 hours." (*Id.*)  Because Plaintiff was unable to satisfy the "Total Disability" clause under the Policy based on the documentation submitted, Defendant informed Plaintiff on December 20, 2005 that his final benefits for long term disability had been issued and that his claim was closed.[4] (*Id.* at 78.)  On February 21, 2006, Plaintiff appealed Defendant's decision to terminate the long term disability benefits. (*Id.* at 448.)

On February 10, 2006, Plaintiff's treating physician, Dr. David Fagan, submitted a letter to Defendant, stating that Plaintiff, because of "severe fatigue, weakness, and secondary depression[,]" was "completely disabled" and was "certainly . . . going to remain

---

[3]Plaintiff contends that Plaintiff's examining physicians were unaware of Plaintiff's job duties and therefore, did not have sufficient knowledge to determine Plaintiff's functional limitations. (Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. 7-8.)  However, Dr. Spivey was aware of Plaintiff's job duties, noting in one medical document that Plaintiff "work[ed] as a heavy equipment operator for a local contracting company." (Admin. R. 189.)  In addition, the Court is hard-pressed to find that Dr. Sanchez was unaware of Plaintiff's job duties, considering the documentation that Dr. Sanchez filled out regarding Plaintiff's ability to return to work.  (*See e.g, id.* at 309, 312, 316, 318-19.)

[4]Plaintiff filed a claim for Social Security disability benefits on April 21, 2005. (Admin. R. 225.)  The Social Security Administration denied Plaintiff's claim on September 16, 2005. (*Id.* at 145-46.)

5

disabled for the foreseeable future." (Admin. R. 118.) Dr. Fagan sent another letter to Defendant on June 20, 2006, reiterating his opinion that Plaintiff was "completely disabled" and suggested that he did not "expect [Plaintiff's] overall conditions to improve in the near future." (*Id.* at 124-25.) However, Dr. Fagan remarked that his physical examination of Plaintiff, done on June 1, 2006, was "essentially normal" and that "[h]is weight ha[d] been stable." (*Id.* at 124.) On July 13, 2006, Dr. Fagan spoke with a physician retained by DRMS regarding Plaintiff's claim. (*Id.* at 374.) Dr. Fagan admitted that his opinions regarding Plaintiff's disability were based solely on Plaintiff's subjective complaints, but that he regarded them as "reasonable."[5] (*Id.*) Dr. Fagan also provided that he had not placed any driving or lifting limitations on Plaintiff. (*Id.*) Defendant, by a letter dated July 18, 2006, notified Plaintiff that his appeal of the benefits-denial decision was denied based on the documentation submitted.[6] (*Id.* at 36-39.) Specifically, Defendant informed Plaintiff that the medical documentation did not provide objective support of Plaintiff's impairing condition and subjective complaints. (*Id.* at 38.)

---

[5]The Administrative Record contains no Functional Capacity Evaluation confirming Plaintiff's disability. (*See* Admin. R. 50.)

[6]On July 7, 2006, Defendant asked Plaintiff's counsel for an extension of time to consider Plaintiff's appeal and receive any additional documentation. (Admin. R. 42.) Plaintiff's counsel declined the extension and requested an immediate decision on appeal. (*Id.* at 46.)

6

**II. Conclusions of Law**[7]

    A.    <u>ERISA Analytical Framework</u>

ERISA permits "a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008). In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111-13 (1989), the Supreme Court addressed the appropriate standard of judicial review of benefit determinations. As explained by the Court in *Firestone,* four principles should guide a Court's review. First, a court should be "guided by principles of trust law." *Id.* at 111. Second, "[p]rinciples of trust law require courts to review a denial of plan benefits 'under a *de novo* standard' unless the plan provides to the contrary." *Glenn,* 128 S. Ct. at 2348 (quoting *Firestone*, 489 U.S. at 115). Third, "[w]here the plan provides to the contrary by granting the administrator . . . *discretionary authority* to determine eligibility for benefits, [t]rust principles make a *deferential standard* of review appropriate."[8] *Id.* (third alteration in original)

---

    [7]This action presents this Court with its first opportunity to apply the principles announced by the Supreme Court in *Metro. Life Ins. Co. v. Glenn,* 128 S. Ct. 2343 (2008) which resulted in a modification of the Eleventh Circuit's analytical framework for ERISA cases in which the claimant alleges that the plan administrator operates under a conflict of interest. The Court also observes that some of its conclusions of law are necessarily intertwined with findings of fact and for the sake of clarity, the Court has included those factual findings in the Conclusions of Law section of the Order.

    [8]This *deferential standard* is an abuse of discretion standard which the Eleventh Circuit equates with an *arbitrary and capricious standard*. *See Doyle*, 542 F.3d at 1356; *see also Yochum v. Barnett Banks, Inc.*

(internal citation and quotation marks omitted).  Fourth, "[i]f 'a benefit plan gives discretion to an administrator . . . who *is operating under a conflict of interest*, that conflict must be *weighed as a factor* in determining whether there is an abuse of discretion.'" *Id.* (quoting *Firestone*, 489 U.S. at 115).

Based on *Firestone* as clarified by *Glenn,* the Court must first determine whether the plan provides the plan administrator with discretion in administering the plan.  If it does not, the Court reviews the plan administrator's denial of benefits *de novo*.  *See Doyle*, 542 F.3d at 1355-56.  If the plan administrator is provided with discretion, then under trust principles, the plan administrator's denial of benefits is entitled to appropriate deference based upon whether the administrator abused his discretion by making a denial that is arbitrary and capricious.  *Id.*  The first step in determining whether the administrator abused his discretion is to decide whether his denial was *de novo* wrong.  *Id.; see Taylor v. Broadspire Servicing Inc.*, No. 08-11639, 2008 WL 3864252, at *4 (11th Cir. Aug. 21, 2008) (per curiam) (noting that when the arbitrary and capricious standard applies, the court first determines whether the plan administrator's benefits decision was *de novo* wrong); *cf. White v. Coca-Cola Co.*, 542 F.3d 848, 855-57 (11th Cir.

---

*Severance Pay Plan*, 234 F.3d 541, 544 (11th Cir. 2000) (per curiam); *Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1450 n.2 (11th Cir. 1997); *Jett,* 890 F.2d at 1139.

2008) (finding that the plan administrator's benefits decision was wrong, but reasonable under the arbitrary and capricious standard). If the denial was *not* wrong, then it could not have been arbitrary and capricious and thus the administrator did not abuse his discretion. If his denial was *de novo* wrong, then the Court must evaluate all of the relevant factors, including whether the administrator was operating under a conflict of interest, to determine whether the administrator's denial of benefits was arbitrary and capricious. If the administrator's decision was wrong but reasonable, taking into consideration all of the relevant factors, including any conflict of interest, then no abuse of discretion occurred and the denial must be upheld.

B.   The Policy's Discretionary Language

Contrary to Plaintiff's contention, the Policy clearly provides Defendant with discretion in making benefits-denial decisions. The Policy provided, in pertinent part, that "[Defendant] shall have authority and full discretion to determine all questions arising in connection with the Policy benefits" and that "[t]he actions, determinations, and interpretations of [Defendant] with respect to all such matters shall be conclusive and binding." (Admin. R. 28.) The Policy also provided that "[i]n making any benefits determination under [the] Policy, [Defendant] [would] have the discretionary authority both to determine an Insured's eligibility for benefits and to construe the terms of [the] Policy." (*Id*. at 31.)

9

It is clear from the Policy's language that Defendant had the "discretionary authority to determine eligibility for benefits [and] to construe the terms of the plan." *Firestone*, 489 U.S. at 115; *see Guy v. Se. Iron Workers' Welfare Fund*, 877 F.2d 37, 38-39 (11th Cir. 1989) (holding that the arbitrary and capricious standard was appropriate because the plan conferred upon the administrator "full and exclusive authority to determine all questions of coverage and eligibility" and "full power to construe the provisions of [the] Trust") (alteration in original) (internal quotation marks omitted); *see also Jett*, 890 F.2d at 1138 (holding that the arbitrary and capricious standard of review was applicable because the plan gave the administrator "the exclusive right to interpret the provisions . . . so its decision [was] conclusive and binding"); *cf. Kirwan v. Marriott Corp.*, 10 F.3d 784, 788-89 (11th Cir. 1994) (holding that the language of the plan fell short of the express grant of discretionary authority because there was no grant of authority to construe the terms of the plan). Accordingly, the administrator's denial of benefits is entitled to deferential review and can only be overturned if the denial was arbitrary and capricious, thus constituting an abuse of discretion. To determine whether the denial was arbitrary and capricious, the Court first examines *de novo* whether Defendant's benefits-denial decision was wrong. *See Doyle*, 542 F.3d at 1356.

### C.   Was the Denial Decision *De Novo* Wrong?

The Court finds that Defendant's benefits-denial decision was not *de novo* wrong.  "A decision is 'wrong' if, after a review of the decision of the administrator from a *de novo* perspective, the court disagrees with the administrator's decision."  *Glazer*, 524 F.3d at 1246 (internal quotation marks omitted).  Thus, the Court "must consider, based on the record before the administrator at the time [the] decision was made, whether [it] would reach the same decision as the administrator."  *Id.*

The Court bases its conclusion that the denial was not wrong on the following.  Plaintiff's surgeon submitted documentation that indicated that Plaintiff could have returned to work as of March 1, 2005.  (Admin. R. 551.)  Plaintiff's gastroenterologist also submitted documentation that indicated that Plaintiff had no functional limitations as of December 6, 2005.  (*Id.* at 106.)  In addition, Plaintiff admitted that he alone made the subjective decision not to work.  (*Id.* at 506.)  The only medical evidence in the record which would have supported a finding that Plaintiff was totally disabled was given by Plaintiff's treating physician, Dr. Fagan.  However, Dr. Fagan undisputably admitted that his opinion that Plaintiff was "completely disabled" was based solely on Plaintiff's subjective complaints and not on the physical examination of Plaintiff done on June 1, 2006, which Dr. Fagan remarked was

11

"essentially normal." (*Id.* at 124.)[9]  Dr. Fagan also admitted that he had not placed any driving or lifting limitations on Plaintiff. (*Id.* at 374.)  Based on the foregoing, the Court finds that, upon *de novo* review of the record, Defendant's decision to terminate Plaintiff's long term benefits was not wrong.  Thus, Defendant's denial of benefits must be upheld.

> D. Even if the Denial was "Wrong," it was not an Abuse of Discretion

Assuming *arguendo* that Defendant's decision was *de novo* wrong, the Court finds that the denial was nonetheless reasonable and thus it was not an abuse of discretion.  A reasonable decision cannot be arbitrary and capricious.  In evaluating the reasonableness of the denial, the Court must take into account whether the Defendant was operating under a conflict of interest.

Plaintiff contends that Defendant operated under a conflict of interest because it was responsible for both determining eligibility and paying benefits under the Policy.  (Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. 5); *see Townsend v. Delta Family-Care Disability and Survivorship Plan*, No. 08-11340, 2008 WL 4507571, at *3 (11th Cir. Oct. 8, 2008) (per curiam) (noting that in most cases a conflict of interest exists where the plan administrator determines

---

[9] The Court notes that although Defendant must take into account Plaintiff's subjective reports of fatigue and weakness, *see Stiltz v. Metro. Life Ins. Co.*, 244 F. App'x 260, 264-65 (11th Cir. 2007) (per curiam), Defendant may also consider the extent to which objective medical evidence supports or contradicts Plaintiff's subjective reports, *Wangenstein v. Equifax, Inc.*, 191 F. App'x 905, 911-12 (11th Cir. 2006).

eligibility for benefits and also pays those benefits out of its own assets); *see also Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1326 (11th Cir. 2001) (holding that a conflict of interest existed between defendant-administrator's fiduciary role and its profit making role because defendant-administrator paid out to beneficiaries from its own assets).

Although the Eleventh Circuit has held that an administrator's dual role as payor and fiduciary may create an apparent conflict, Defendant has produced evidence which it contends sufficiently undermines any conclusion that Defendant operated under a conflict in this case. Pursuant to a negotiated reinsurance agreement, Defendant's reinsurer, and not Defendant, pays an insured's benefits. (Knutsen Aff. ¶ 9.) Specifically, Defendant receives full indemnity on claims it pays as long as it agrees with its third party administrator's recommendations. (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. 10 [hereinafter Def.'s Opp'n Mem.]; *see* Knutsen Aff. ¶ 9.) In this particular situation, Defendant agreed with DRMS's recommendation to deny payment; thus, if Plaintiff ultimately prevails, Defendant's assets are not at risk. (Def.'s Opp'n Mem. 10); *cf. Perkey v. Prudential Ins. Co. of Am.*, No. 93-285-Civ-Orl3ABF, 1994 WL 652771, at *6 (M.D. Fla. Nov. 10, 1994) (noting that because the defendant-administrator was not reinsured, it faced a conflict of interest every time a claim for benefits was filed).

The Court rejects Defendant's contention that it did not operate under a conflict of interest.  Although its assets would not have been used to pay the actual claim submitted by Plaintiff, it certainly had an incentive to always follow DRMS's recommendations so it never had to pay a claim out-of-pocket.  Presumably, it paid premiums to its reinsurer which were based in part upon its claims experience.  If it paid more claims, then the amount of its reinsurance premiums would obviously increase.  Thus, the Court finds that some conflict existed between its interests and that of Plaintiff.  Therefore, this conflict must be considered in determining whether Defendant abused its discretion here.  *See Glenn*, 128 S. Ct. at 2351 (noting that the degree and nature of the conflict should be analyzed to determine the extent to which it affected, if at all, a plan administrator's benefits decision).

Applying the abuse of discretion standard, the Court finds that Defendant's benefits-denial decision was reasonable.  "In reviewing a termination of benefits under the arbitrary and capricious standard, the function of a reviewing court is to discern whether there was a reasonable basis for the decision, relying on the facts known to the administrator at the time the decision was made." *Buckley v. Metro. Life*, 115 F.3d 936, 941 (11th Cir. 1997) (per curiam).  In other words, "[a]s long as a reasonable basis appears for [Defendant's] decision, it must be upheld as not being arbitrary

14

or capricious, even if there is evidence that would support a contrary decision." *Jett*, 890 F.2d at 1140.

The facts available to Defendant when it terminated Plaintiff's long term benefits on December 3, 2005 clearly support a finding that its initial benefits-denial decision was reasonable. The documentation Defendant received from Plaintiff's surgeon, Plaintiff's gastroenterologist, and Plaintiff's treating physician all suggest that Plaintiff was able to return to his regular occupation. (*See, e.g.*, Admin. R. 106, 510-11, 551.) Specifically, Plaintiff's surgeon, Dr. Sanchez, indicated that Plaintiff could have returned to work on March 1, 2005; however, Plaintiff failed to do so because "he [did] not feel he [was] able to." (*Id.* at 551.) Plaintiff's gastroenterologist, Dr. Spivey, stated that Plaintiff had no functional limitations as of December 6, 2005. (*Id.* at 106.) Plaintiff's treating physician, Dr. Fagan, provided no documentation supporting Plaintiff's contention that he was "totally disabled" beyond November 2005. (*Id.* at 510-11.) Therefore, the Court finds that Defendant's initial benefits-denial decision was reasonable.

The Court also finds that Defendant's benefits-denial decision on appeal was reasonable. Dr. Fagan submitted two letters supporting Plaintiff's contention that he was totally disabled. (*Id.* at 118, 124-25.) Plaintiff contends that Defendant "[a]rbitrarily refus[ed] to credit the opinion of Dr. Fagan." (Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. 8-9); *see Black & Decker Disability Plan v. Nord*,

538 U.S. 822, 834 (2003) ("Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician."). However, there is no evidence in the record that indicates that Defendant failed to sufficiently credit Dr. Fagan's opinions. Although Dr. Fagan did suggest that Plaintiff was "completely disabled" (Admin. R. 118, 124-25), Dr. Fagan *also* suggested that his opinion was based solely on Plaintiff's subjective complaints rather than based on the physical examination of Plaintiff, which Dr. Fagan remarked as "essentially normal." (*Id.* at 124.) Coupling this with the fact that Dr. Fagan did not place any driving or functional limitations on Plaintiff (*Id.* at 374), the Court finds that Defendant's benefits-denial decision on appeal was reasonable.

Finally, the Court finds that there is nothing in the totality of the circumstances that indicates that Defendant's conflict of interest was a major factor in its decision. First, the nature of the conflict is diminished to some degree by the fact that Plaintiff's claim would not have been paid directly from Defendant's assets but instead would have been paid through reinsurance. While not dispositive of the existence of a conflict, the existence of reinsurance reduces the degree of the conflict. Also, Defendant continued to pay Plaintiff benefits for nearly ten months while it wrestled with the question of Plaintiff's eligibility. In addition, Defendant investigated the case thoroughly and developed a complete

16

and thorough record as to Plaintiff's condition. Defendant based its decision on the opinions of independent specialists who were not affiliated with or hired by Defendant and who had sufficient knowledge of Plaintiff's medical condition. Therefore, the Court finds that Defendant's conflict did not affect Defendant's benefits decision.

Having carefully reviewed the record, the Court finds that Defendant's decision was the result of a reasoned process that considered all of the medical evidence. Indeed, Defendant afforded Plaintiff several opportunities to submit additional evidence, and Defendant sufficiently reviewed all the evidence submitted. It is important to note that the issue here is not whether Plaintiff suffered from a medical condition, but whether Defendant's determination that Plaintiff's medical condition did not meet the definition of "total disability" was arbitrary and capricious. The Court finds that Defendant's initial benefits-denial decision, as well as its decision on appeal, were reasonable based on the record.[10] Therefore, the Court must uphold those decisions.

---

[10] The Court finds that the denial of Plaintiff's claim for Social Security disability benefits further supports the Court's conclusion that Defendant's benefits-denial decision was not arbitrary and capricious. *See Kirwan*, 10 F.3d at 790 n.32 ("A district court may consider the Social Security Administration's determination of disability in reviewing a plan administrator's determination of benefits."); *see also McDaniel v. Hartford Life and Accident Ins. Co.*, No. 5:07-cv-7 (CAR), 2008 WL 4426087, at *14 (M.D. Ga. Sept. 25, 2008) (taking into account the denial of plaintiff's claim for Social Security disability benefits as a factor in determining whether defendant's benefits-denial decision was arbitrary and capricious).

CONCLUSION

For the reasons stated above, the Court finds that Defendant's initial benefits-denial decision, as well as its decision on appeal, were not *de novo* wrong, but that even if they were, they were nonetheless reasonable. Accordingly, Plaintiff shall recover nothing from Defendant, and judgment shall be entered in favor of Defendant.[11]

IT IS SO ORDERED, this 4th day of December, 2008.

                                          S/Clay D. Land
                                              CLAY D. LAND
                                    UNITED STATES DISTRICT JUDGE

---

[11] In light of the Court's ruling in favor of Defendant, Plaintiff's motion for attorney fees under 29 U.S.C. § 1132(g)(1) is denied.